MAKAR, J.,
concurring in part, dissenting in part with opinion.
Expediting the disposition of this license reinstatement matter is sensible, and I concur in our order to do so. I do not see the sensibility, however, of denying the emergency stay sought by the Department of Health, which seeks to prevent a physician convicted of federal crimes, who is currently serving out his sentence in a halfway house controlled by the Federal Bureau of Prisons, from practicing medicine in the State of Florida during the pendency of this appeal. Denial of the stay allows the physician’s medical license to be reinstated immediately, thereby allowing him to practice medicine while still in the ongoing custody of federal prison officials in Dania, Florida.
Procedurally, the Department’s filings are sufficiently detailed to seek relief available under Rule 9.190(e)(2)(A). Whatever shortcomings exist, perceived or otherwise, are overcome by its seeking expeditiously to protect the public under these unusual circumstances. That is sufficient good cause under the Rule, and this Court has discretion to “grant a stay upon appropriate terms.” Fla. R. App. P. 9.190(e)(2)(A).
On the merits of the stay, the legal question is whether the Board of Medicine erred in its 6-4 vote to interpret its settlement agreement with the physician to allow the anomalous situation presented. The Board initially acted unanimously to reinstate the physician’s license based on representations that the physician was no longer incarcerated, which calls into question what was meant by “release from prison” and “incarceration” as those phrases are used in the settlement at issue, which states in relevant part:
(a) Upon Respondent’s release from prison, Respondent’s license shall be suspended for a period of one year; however, the Board will give the Respondent credit for the 2 months that his license was suspended pursuant to the Emergency Suspension Order and will stay the remaining ten months of said suspension.
(b) Upon Respondent’s release from prison, he shall appear before the Board at the first meeting of the Board following his release from incarceration and the Board may require at that time that he demonstrate his ability to practice medicine with skill and safety to patients prior to resuming the practice of medicine in this State by establishing that (i) Respondent is in compliance with the probation terms set forth in the Judg *1287 ment in the criminal case that is the basis of this action and that as required by Rule 6UB8-8.003(3)(f), Florida Administrative Code, Respondent has satisfied all other criminal sanctions imposed by the court-....
The Department, which learned of the Board’s action, moved for reconsideration. Though unclear from the record, it appears the Board was unaware that the physician was confined to a halfway house controlled by the Federal Bureau of Prisons when it reinstated his license. As grounds for reconsideration, the Department believed that the physician’s assignment to the halfway house did not constitute his “release from prison” or “release from incarceration” under the settlement agreement. The Board by split vote denied the Department’s motion, which led to this appeal and the emergency stay request.
The Department presents an exceptionally compelling case for a stay pending appeal: absent a stay, a felon is allowed to practice medicine from a federally-controlled halfway house while still serving out his criminal sentence. No one disputes this unusual scenario. Indeed, the physician concedes that “under the federal prison regulations Dr. Mendelsohn is technically considered to be incarcerated while residing at the halfway house for purposes of the Federal Bureau of Prisons[.]” In the Department’s view, the situation presents a classic case of potential public harm because the Board’s action fails to “protect the health, safety, and welfare of the citizens of Florida” thereby undermining the integrity of the medical profession. Interpreting the settlement agreement to allow such a result is an abdication of the Board’s duty to protect the public. Beyond the need to safeguard the public from an incarcerated physician practicing medicine, the Department also notes that the physician is not even in compliance with other terms of the settlement agreement. For instance, the settlement agreement says the physician must show that he is in compliance with his probationary terms, but he is not even on probation yet; it also says that he must show upon release from incarceration that he has “satisfied all other criminal sanctions imposed by the court,” but he apparently hasn’t because he can’t leave the halfway house until June 30, 2015. For all these reasons, the Department makes a highly persuasive case for a stay.
The physician counters that the Department lacks standing and jurisdiction to challenge the Board, that the Department is not “adversely affected” and its concerns with public safety are meritless, that the physician’s incarceration was unrelated to the skills necessary to practice medicine, and that his reentry to practice will reduce concern that his skills have eroded in prison. But the Department’s concerns are not based on societal altruism; instead, the Department has jurisdiction over the disciplinary actions of its boards. The first sentence of section 456.073, Florida Statutes, says: “Disciplinary proceedings for each board shall be within the jurisdiction of the department.” That section goes on to discuss the department’s authority visa-vis the “boards under its jurisdiction,” saying in subsection (7) that the “department shall have standing to seek judicial review of any final order of the board, pursuant to s. 120.68.” It would be the tail wagging the dog to say that the Department of Health is not adversely affected when an agency under its jurisdiction takes an action potentially harmful to the public; that is particularly so under the peculiar situation presented.
On balance, a stay pending appeal plus expedited review meets society’s interest in protecting the public from potential harm during the time when a physician is still incarcerated and serving his federal *1288 sentence. I would grant the emergency stay under these circumstances.